UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST SHEET METAL WORKERS
ORGANIZATIONAL TRUST, et al.,

             Plaintiffs,

         v.

TRACIE L. GLOOR, doing business as
PACIFIC COAST HEATING & SHEET
METAL,

             Defendant.

CASE NO. C07-0056JCC

ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 14 & 18.) Having considered the pleadings, affidavits and the record in this case, and finding oral argument unnecessary, the Court hereby GRANTS Plaintiffs' motion for summary judgment and DENIES Defendant's cross-motion for summary judgment, as follows.

**I. BACKGROUND**

Plaintiffs include the trustees of various labor-management funds[1] for Sheet Metal Workers Local

---

[1] The Northwest Sheet Metal Workers Organization Trust, the Northwest Sheet Metal Workers Welfare Fund, the Northwest Sheet Metal Workers Pension Fund, the Northwest Sheet Metal Workers Supplemental Pension Trust, and the Western Washington Sheet Metal Training Trust. Hereinafter, collectively "the Funds."

ORDER – 1

66 ("Local 66"), along with the Funds and Local 66 itself. Defendant is a sheet metal contractor, party to a collective bargaining agreement with Local 66. ("CBA" (Dkt. No. 16 at 4).) Under the CBA, Defendant is obligated to make certain payments to Plaintiffs on behalf of those employees represented by Local 66. Relevant for the purposes of this action, Defendant is required to make monthly contributions to the Funds by submitting a completed contribution reporting form and accompanying payment within fifteen days after the end of each calendar month. (Addendum #1, Art. VII § 2 (Dkt. No. 16 at 24).)

Plaintiffs assert and Defendant admits that, from August 2006 through October 2006, Defendant failed to timely make the required contributions. (Tracie L. Gloor Decl. 3 (Dkt. No. 5).) Defendant has since filed remittance reports and contributions for the period at issue. Defendant began making payments on the delinquent contributions in December 2006, and made the last of such payments in April 2007. (Tim Yeager Decl. 4 (Dkt. No. 17); Gloor Decl. 3 (Dkt. No. 5).) Defendant ultimately overpaid the amount owing for delinquent contributions; Plaintiffs applied the overpayment to the amount it claims Defendant owes in liquidated damages. (Yeager Decl. 4 (Dkt. No. 17).)

On January 12, 2007, Plaintiffs filed this action under Section 301 of the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiffs filed the instant motion for summary judgment on June 25, 2007. (Dkt. No. 14.) Although Defendant has since paid all of the delinquent contributions originally owed, Plaintiffs seek $3,596.00 in liquidated damages, $1,078.85 in pre-judgment interest through April 19, 2007, $683.95 in costs, and $4,151.00 in attorneys' fees. Plaintiffs also request interest on all of the foregoing at a rate of 4.94% per annum until paid. (Pls.' Summ. J. Mot. 3–4 (Dkt. No. 14).)

Defendant's cross-motion for summary judgment (Dkt. No. 18) requests that the Court decline to make any award to Plaintiffs and further asserts that judgment should be entered in favor of Defendant if the Court finds it overpaid its delinquent contributions. *Id.* at 3–4. Defendant does not contend that the contributions at issue were in fact timely paid or were paid prior to Plaintiffs bringing this action. Defendant instead asserts that Plaintiffs' counsel made Defendant an offer to settle in December 2006

ORDER – 2

(Settlement Agreement (Dkt. No. 12-2 at 5–7)) with terms more favorable than the damages now requested. Although Defendant acknowledges that it declined the offer (Ans. 1 (Dkt. No. 12)), Defendant nevertheless argues that if Plaintiffs had revised the offer as Defendant requested, a settlement agreement would have been reached and, in particular, extra attorneys' fees would not have accumulated. On this basis—and because judgment in Plaintiffs' favor would be a financial hardship—Defendant urges the Court to deny the Plaintiffs' requested award.

**II. LEGAL STANDARD**

Summary judgment motions are governed by Federal Rule of Civil Procedure 56(c), which provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**III. ANALYSIS**

*A. Defendant's Legal Liability*

Other than a claim that the CBA or other agreement is in itself unlawful or was not in effect during the time at issue, ERISA forecloses most employer defenses in multiemployer delinquency actions. *See, e.g.*, *Southwest Adm'rs., Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986) ("Congress and

ORDER – 3

the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly."). Defendant does not argue that the CBA is unlawful, that it had been terminated, or that Defendant did not in fact consent to be bound by the agreement. Instead, Defendant argues that it should be excused from its obligations under the CBA because to hold otherwise would cause the Defendant financial hardship. While the Court is not unsympathetic toward Defendant's current financial situation, Defendant was a signatory to the CBA and thus bound by it. (*See* Agreement (Dkt. No. 16 at 19); Letter of Understanding (Dkt. No. 16 at 55).)

As for Defendant's urging that Plaintiffs' prior offer—admittedly rejected by Defendant—should estop the Court from awarding Plaintiffs damages to which they are entitled by statute, that argument is unavailing. First, certain damages arising out of a violation of ERISA are mandatory. *See, e.g.,* 29 U.S.C. § 1132(g)(2); *Southwest Adm'rs.*, 791 F.2d at 778. Second, even if the decision whether to grant the award were within the Court's discretion, the parties' failed settlement negotiation would not be a proper basis for denying relief. Plaintiffs' settlement offer likely reflected the savings that would have resulted had Defendant accepted the offer (in which case the mandatory relief provisions of § 1132(g)(2) would not have been triggered). However, the amounts for which Plaintiffs were willing to settle in December 2006 do not affect the measure of damages that they are entitled to pursue in this suit.

Therefore, taking the facts in the light most favorable to Defendant for the purposes of summary judgment, Plaintiffs have successfully met their burden and Defendant fails to assert a legitimate defense. The CBA required Defendant to make the payments at issue and under ERISA:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

ORDER – 4

29 U.S.C. § 1145. Defendant violated ERISA by failing to make timely contributions. Summary judgment in favor of the Plaintiffs is therefore proper.

***B. Damages***

ERISA provides that, in an action to recover delinquent contributions where a judgment in favor of the fund is awarded, the Court is *required* to award the plan the following damages:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). In addition, in order to be entitled to a mandatory award, three requirements must be met: "(1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Northwest Adm'rs, Inc., v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).

Although Defendant has since paid all of the delinquent contributions that were the basis for this action, it is undisputed that delinquent contributions were owed at the time Plaintiffs filed the Complaint. Moreover, the Court's decision finding in favor of Plaintiffs in this motion for summary judgment amounts to a judgment in favor of Plaintiffs. Defendant does not avoid liability for statutory damages by having remitted the unpaid contributions in the interim. *Id.* at 258 ("mandatory fees are available under § 1132(g)(2) notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.") (internal quotations omitted).

Despite the fact that there are no longer any unpaid contributions to award, in order to properly determine the amount of statutory damages to which Plaintiffs are entitled for interest, liquidated

ORDER – 5

damages and attorneys' fees, the Court must make a determination as to the total amount Defendant owed in delinquent contributions for the months at issue. The parties disagree as to this number: Plaintiffs assert the total was $20,479.10 (Yeager Decl. 4 (Dkt. No. 17)), but Defendant takes issue with this amount, citing a lesser total of $20,307.97 reported by Plaintiffs' attorney Jacob Black in a fax to Defendant on April 17, 2007. (Dkt. No. 12-2 at 10.)[2]

In a declaration filed with the Court, Plaintiffs' counsel, Mr. Brennan, states that in January 2007 he "calculated the outstanding Contributions, Liquidated Damages, and Interest owed by defendant," but used the wrong "contribution rate" in some calculations. (Mark Brennan Decl. 2 (Dkt. No. 15 at 2).) It is not clear if this January number is the same one that was provided to Defendant in April 2007, but Plaintiffs assert that the correct calculations are those in Mr. Yeager's declaration, which was submitted in support of Plaintiffs' motion for summary judgment and includes the $20,479.10 figure. (Yeager Decl. 4 (Dkt. No. 17).) Most likely, this number is derived from Defendant's remittance reports for August, September, and October 2006, which were submitted to the Court attached to Mr. Yeager's declaration. (Dkt. No. 17 at 19–26.) However, not all of the copies of the remittance reports are perfectly legible and Mr. Yeager's declaration does not explain how he arrived at the figure of $20,479.10. Without more detailed information as to how Plaintiffs arrived at this higher number, the Court cannot determine the appropriate damages to award.

## IV. CONCLUSION

For the foregoing reasons, this Court GRANTS Plaintiffs' motion for summary judgment. The sole remaining issue in this case is the correct measure of damages. Plaintiffs are ORDERED to submit, within five (5) court days, legible remittance reports and an explanation supporting its total for delinquent

---

[2] Due to this difference, the parties disagree as to the amount Defendant has overpaid the original delinquent contributions. (Def.'s Cross Summ. J. Mot. 4 (Dkt. No. 18); Yeager Decl. 4 (Dkt. No. 17).)

ORDER – 6

contributions originally owed in this action.

SO ORDERED this 12th day of September, 2007.

_____
John C. Coughenour
United States District Judge

ORDER – 7